## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Thomas E. Whatley, on behalf of himself and others similarly situated | § § § | |
| Plaintiff | § § | CLASS ACTION COMPLAINT |
| | § | Civil Action No.: |
| vs. | § § | |
| TeleCheck Services Inc., and TRS Recovery Services, Inc. | § § § | Jury Trial Demanded |
| | § | |
| Defendants | § | |

### Nature of Action

1.      This is a class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

2.      Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3.      As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—recently explained, "[h]armful debt collection practices remain a significant concern today. The CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

---

[1]      *See* Brief for the CFPB as Amicus Curiae, Dkt. No. 14, p. 10, Hernandez v. Williams, Zinman, & Parham, P.C., No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinmanparham-p.c./140821briefhernandez1.pdf

4.     In fact, in 2015, forty percent of the complaints received by the CFPB involved debt collectors' attempts to collect debts that consumers state they did not owe.[2]

5.     To combat this serious problem in the debt collection industry, the FDCPA requires debt collectors to send consumers "validation notices" containing certain information about their alleged debts and consumers' rights. 15 U.S.C. § 1692g(a).

6.     A debt collector must send this notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," unless the required information was "contained in the initial communication or the consumer has paid the debt." *Id*., § 1692g(a).

7.     As noted by the CFPB and the Federal Trade Commission, "this validation requirement was a 'significant feature' of the law that aimed to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Hernandez*, No. 14-15672, at 5 (quoting S. Rep. No. 95-382, at 4 (1977)).

8.     Relevant here, any collection activities and communications during the validation period may not overshadow or be inconsistent with the disclosure of the consumer's validation rights so as not to dissuade the consumer from invoking those rights.  *See* 15 U.S.C. § 1692g(b).

9.     This case focuses on TeleCheck Services, Inc.'s ("TeleCheck") and its sister-subsidiary TRS Recovery Services, Inc.'s ("TRS") (collectively "Defendants") violative practices in collecting, and attempting to collect, on returned checks from Texas consumers.

### Jurisdiction and Venue

10.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

---

[2]     http://files.consumerfinance.gov/f/201603_cfpb-fair-debt-collection-practices-act.pdf, at pg. 11.

11.    Venue is proper before this Court under 28 U.S.C. § 1391(b) as the acts and transactions giving rise to Thomas E. Whatley's ("Plaintiff") action occurred in this district, as Plaintiff resides in this district, and as Defendants transact business in this district.

## Parties

12.    Plaintiff is a natural person who at all relevant times resided in Denton, Texas.

13.    Plaintiff was originally obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendants.

14.    Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely the purchase of a DVD writer for a laptop computer from Office Depot (the "Debt").

15.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

16.    Defendants are Delaware corporations, and subsidiaries of First Data Corporation.

17.    Defendants are entities that at all relevant times were engaged, by use of the mails, in the business of attempting to collect the Debt from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

18.    Upon information and belief, at the time Defendants attempted to collect the alleged Debt from Plaintiff, the Debt was in default, or Defendants treated the obligation as if it was in default from the time that Defendants acquired it for collection.

19.    Defendants use instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

20.    Defendants are each a debt collector as defined by 15 U.S.C. § 1692a(6).

21.     Separately, TeleCheck is liable for any FDCPA violations by TRS that occurred in the course of attempting to collect the Debt on behalf of TeleCheck. *See, e.g.*, *Marucci v. Cawley & Bergmann, LLP*, 66 F.Supp.3d 559, 565 (D.N.J.2014) (consumers stated a claim of vicarious liability against debt buyer under FDCPA, where complaint alleged that business hired debt collector to collect a debt, that debt collector sent collection letter which gave rise to consumers' claims on behalf of debt buyer, and that debt collector did so within the scope of its relationship with debt buyer); *Hernandez v. Midland Credit Management, Inc.*, No. 04 C 7844, 2007 WL 2874059, at *17 (N.D. Ill. Sept. 25, 2007) ("Moreover, the FDCPA recognizes that one who acquires debt merely for collection purposes is acting more like a debt collector than a creditor; thus, the Act treats assignees of debt 'as debt collectors if the debt sought to be collected was in default when acquired by the assignee.").[3]

### Defendants' collection practices

22.     TeleCheck provides recommendations to merchants throughout the United States as to whether to accept consumers' checks.[4]

23.     To do so, TeleCheck maintains a live database comprised of check and debt records reported by hundreds of thousands of merchants.[5]

24.     TeleCheck can verify the presence or lack of unpaid debt related to a check writer in response to a subscribing merchant's queries and provide check acceptance decisions based on what it finds.[6]

---

[3]     Internal quotations are omitted.

[4]     https://www.sec.gov/Archives/edgar/data/883980/000162828016011729/a12311510-k.htm

[5]     https://www.firstdata.com/telecheck/telecheck-declined-check.html#17

[6]     *Id.*

25.     When a consumer writes a check to a TeleCheck subscribing merchant, the merchant first submits the check to TeleCheck for analysis before accepting it.

26.     The merchant does this by either manually or electronically providing the check's magnetic ink character recognition ("MICR") information, and often the check writer's ID number, to TeleCheck.[7]

27.     When TeleCheck receives these pieces of identifying data, it first looks for "matches" of the identifying data within its database of transactions, reviewing for evidence of unpaid checks or account debt on checking accounts known to be held or used by that check writer.

28.     Then, TeleCheck analyzes the transaction against one of its many risk models.

29.     The model looks for "fraudulent" characteristics and good characteristics and provides risk analysis accordingly.

30.     If the transaction is above the applicable threshold of acceptable risk, TeleCheck will flag it and issue a single-digit code—a "3"—back to the merchant.

31.     This Code does not tell the merchant the check is not good or that the customer does not have enough money in their account to cover the check.

32.     Rather, this "Code 3" tells the merchant that the transaction contains a significant level of risk markers.[8]

33.     In certain circumstances, if a consumer's check is returned from a bank to a merchant, "TeleCheck is required to purchase the check from the merchant at its face value and pursue collection from the check writer."[9]

---

[7]     *Id.*

[8]     *Id.*

[9]     https://www.sec.gov/Archives/edgar/data/883980/000162828016011729/a12311510-k.htm

34.    Upon information and belief, when a check is dishonored, TeleCheck first attempts to collect on the check by making three electronic re-presentments of the dishonored check to the financial institution the instrument was drawn on.

35.    If unsuccessful, TeleCheck "hires" TRS to take further collection action against the consumer.

36.    Upon information and belief, at the time it acquires the debt, TeleCheck also notates the returned check in its database, meaning each of the over 300,000 merchants that use its services may become aware of a risk with the alleged debtor any time he attempts to write a check or open an account in the future at one of those merchants.

37.    TRS, on behalf of TeleCheck, then sends a written debt collection letter to the alleged debtor.

38.    Among other things, the debt collection letter advises the alleged debtor that:

- TeleCheck has purchased the dishonored check and referred the debt to TRS for collection;

- TeleCheck has entered the alleged debtor's name in its nationwide computer files;

- Until the debt is resolved, TeleCheck may not approve the alleged debtor's checks or the opening of a checking account at more than 300,000 merchants and banks nationally;

- Any delay, or attempt to avoid the debt, may affect the alleged debtor's ability to use his checks; and

- TeleCheck collects nonpublic personal information about the alleged debtor, including social security number, driver's license number or other identification information, name, address and phone number, account balances and transactions, payment history, transaction or loss history, overdraft history, and checking account information, and may share that information with affiliated and non-affiliated companies.

39.    The debt collection letter also refers the alleged debtor to TRS's website to complete a "Dispute Form" in the event the alleged debtor wishes to dispute the debt.

40.     The "Dispute Form" requires the alleged debtor provide his name, address, phone number(s), bank routing number(s) and account number(s), a description of the disputed item and amount in dispute, and advises the consumer to provide a detailed description of his dispute, including all check numbers, bank account numbers and dates involved, along with attaching form copies of additional documentation that will help support his dispute, such as payment receipts, bank statements, etc.

## Factual Allegations

41.     On April 19, 2016, Plaintiff went to an Office Depot in Denton, TX to purchase a DVD writer for a laptop computer.

42.     Plaintiff consulted with an Office Depot employee concerning the specific DVD writer he wished to purchase, but was provided the wrong DVD writer by Office Depot's employee.

43.     Plaintiff paid for the DVD writer by check in the amount of $32.38.

44.     Unbeknownst to Plaintiff at the time, prior to his visit to Office Depot, his credit union had issued him new checks with a new account number that was one digit different from his prior account number.

45.     As a result, the check Plaintiff provided to Office Depot—which was not one of the new checks he had received—contained an incorrect account number.

46.     The next morning, Plaintiff realized that the DVD writer that was sold to him was not the DVD writer that he had attempted to purchase for his laptop, but was instead a DVD writer for a desktop.

47.     As a result, he immediately called Office Depot, explained that he was given the wrong DVD writer and asked that Office Depot return his check and take the DVD writer back.

48.    Plaintiff was advised by Office Depot that he would have to wait for the check to clear, and then he could come in for a refund.

49.    Over the course of the next few weeks—when Plaintiff's check still had not cleared—he attempted to contact Office Depot on several occasions to determine why the check had not cleared and how he could cancel the transaction and return the product that was provided to him.

50.    By May 10, 2016, Plaintiff had made little progress in this regard, and was still waiting on a formal response from Office Depot's corporate office.

51.    On May 10, 2016, Plaintiff received an initial debt collection letter from TRS dated May 6, 2016.

52.    A copy of the May 6, 2016 debt collection letter is attached hereto as Exhibit A.

53.    The May 10, 2016 letter informed Plaintiff that TeleCheck had purchased a dishonored check in the amount of $32.38 and had forwarded the debt to its affiliate, TRS, for collection. *See* Ex. A.

54.    The letter then informed Plaintiff that:

As a result, TeleCheck has entered your name in its nationwide computer files. Until this is resolved, TeleCheck may not approve your checks or the opening of a checking account at more than 300,000 merchants and banks who use TeleCheck nationally and, TRS's collection efforts may continue.

*See* Ex. A.

55.    On the second page of the May 10, 2016 was a "**Validation Notice**" that advised Plaintiff:

Unless you notify TRS Recovery Services, Inc. within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, TRS Recovery Services, Inc. will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, TRS Recovery Services, Inc. will obtain

verification of the debt and mail you a copy of such verification. *TRS Recovery Services, Inc. will provide you with the name and address of the original creditor, if different from the current creditor.*

*See* Ex. A (emphasis added).

56.    The May 6, 2016 letter also informed Plaintiff that "if [Plaintiff] would like to complete the online inquiry or dispute form, please visit [TRS's] website at www.firstdata.com/trsrecovery.

57.    Under the heading "Dispute," TRS's website states, in pertinent part:

How to dispute or object to a debt with TRS Recovery Services, Inc.

If you have received a collection notice or call and have a dispute or concern related to the item on which TRS Recovery Services, Inc. is collecting, *then you may complete the "Dispute Form" below or you may write a letter and mail or fax it to TRS so that TRS may research your dispute and/or objection.*

TRS Recovery Services, Inc.
Attention: Compliance Department
P.O. Box 4812
Houston, TX 77210-4812
Fax: 402.916.8140

*If you choose to write a letter, please include in your correspondence your first and last name, mailing address, bank routing and account number, and your state issued ID or drivers license number. In addition, please include the name of the merchant or financial institution, and the reference number or a specific description to identify the item in question. Please include a phone number where you may be reached during business hours.* Please allow 30 days to process your request.

(emphasis added). The relevant portion of TRS's website is attached hereto as Exhibit B.

58.    TRS's website has a link to the "Dispute Form."  A true and accurate copy of the "Dispute Form" is attached as Exhibit C.

59.    The "Dispute Form" requires the consumer's name, address, phone number(s), bank routing number(s) and account number(s), a description of the disputed item and amount in dispute, and advises the consumer to provide "a detailed description of your dispute, including all

check numbers, bank account numbers and dates involved. Also, please attach to this form copies of additional documentation that will help support your dispute, such as payment receipts, bank statements, etc." *See* Ex. C.

60.     The last part of the May 6, 2016 letter contained a section titled "**TELECHECK PRIVACY STATEMENT**."  That portion of the letter advised Plaintiff, in pertinent part:

> *TeleCheck Services, Inc. may collect nonpublic personal information about you from the following sources*: (1) information we, or our clients such as retailers and financial institutions, receive from you on checks, applications or other forms; (2) information about your transactions with us, our clients such as retailers and financial institutions, our affiliates, and others; (3) information we receive from other companies; and (4) information we receive from other consumer reporting agencies and financial institutions. The types of personal information from the above sources that TeleCheck collects and shares can include: social security numbers, drivers license numbers or other identification information; name, address and phone number, account balances and transactions; payment history; transaction or loss history; overdraft history; checking account information.
>
> *Financial companies need to share customers' personal information to run their everyday business*.  TeleCheck may share personal balance information with affiliated and non-affiliated companies (both financial and non-financial companies) for everyday business purposes.  For instance, we may use it to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus.

*See* Ex. A (emphasis in original).

61.     Upon reviewing the letter, Plaintiff reasonably believed—as the least sophisticated consumer would believe—that Defendants were notifying over 300,000 merchants and banks that they should not accept Plaintiff's checks or allow him to open accounts.

62.     Plaintiff was also confused—as the least sophisticated consumer would be confused—as to whether he was entitled to thirty days to dispute the debt given that Defendants had represented to him that they had already started the process of making it more difficult for him to use checks and open accounts at more than 300,000 merchants until the Debt was resolved.

63.     Plaintiff further believed—as the least sophisticated consumer would believe—that until he resolved the Debt, Defendants would be disseminating his personal information, including his social security number, driver's license number or other identification information, name, address and phone number, account balances and transactions, payment history, transaction or loss history, overdraft history, and checking account information.

64.     This confusion was buttressed by Plaintiff's May 11, 2016 trip to Walmart to purchase groceries.

65.     Plaintiff attempted to pay Walmart for the groceries with a check from an account and bank different from the account and bank from which he had previously attempted to pay Office Depot.

66.     The check was declined, in front of other customers, including one of Plaintiff's neighbors, even though there was sufficient money in Plaintiff's account to cover the check.

67.     Plaintiff's Walmart receipt stated that "TeleCheck was unable to process your check."

68.     The receipt also noted that "TeleCheck did not make the decision to take an adverse action and is unable to provide you with specific reason(s) why adverse action was taken."

69.     A true and accurate copy of the receipt from Walmart dated May 11, 2016 is attached hereto as Exhibit D.

### Class Allegations

70.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of himself and others similarly situated.

71.     Plaintiff seeks to represent three classes of individuals defined as:

### The Writing Class

(a) All persons with a Texas address, (b) to whom TRS Recovery Services, Inc., on behalf of TeleCheck Services, Inc., (c) mailed an initial debt collection communication that stated: "TRS Recovery Services, Inc. will provide you with the name and address of the original creditor, if different from the current creditor," while omitting that TRS would do so upon the consumer's written request, (d) within the year preceding this complaint, (e) and in connection with the collection of a consumer debt.

### The Overshadowing Class

(a) All persons with a Texas address, (b) to whom TRS Recovery Services, Inc., on behalf of TeleCheck Services, Inc., (c) mailed an initial debt collection communication that (1) stated: "As a result, TeleCheck has entered your name in its nationwide computer files.  Until this is resolved, TeleCheck may not approve your checks of the opening of a checking account at more than 300,000 merchants and banks who use TeleCheck nationally …, or (2) that referred the person to TRS's website to submit a dispute, (d) within the year preceding this complaint, (e) and in connection with the collection of a consumer debt.

### The Privacy Class

(a) All persons with a Texas address, (b) to whom TRS Recovery Services, Inc., on behalf of TeleCheck Services, Inc., (c) mailed an initial debt collection communication that included the TeleCheck Privacy Statement set forth in the May 6, 2016 letter to Plaintiff, (d) within the year preceding this complaint, (e) and in connection with the collection of a consumer debt.

72.     The proposed classes specifically exclude the United States of America, the State of Texas, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Fifth Circuit, and the Justices of The United States Supreme Court, all officers and agents of either Defendant, and all persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

73.     Upon information and good faith belief, the proposed classes are so numerous that joinder of members is impracticable.

74.     The exact number of the members of the proposed classes are unknown at this time, but upon information and good faith belief can be ascertained through appropriate discovery.

75.     The members of the proposed classes are ascertainable because the classes are defined by reference to objective criteria.

76.     In addition, upon information and good faith belief, the classes are ascertainable in that the names and addresses of all members of the proposed classes can be identified by Defendants' business records.

77.     There exists a well-defined community of interest in questions of law and fact that affect all members of the proposed classes.

78.     These common questions of law and fact predominate over questions that may affect individual members of the proposed classes.

79.     These common questions of law and fact include, but are not limited to:

- Defendants' violations of the FDCPA through the use of a form debt collection letter;

- Defendants' identical conduct with regard to all members of the proposed classes;

- The availability of statutory penalties under the FDCPA;

- The availability of attorneys' fees under the FDCPA; and

- The availability of costs under the FDCPA.

80.     Plaintiff's claims are typical of those of the members of the proposed classes.

81.     Plaintiff's claims, and the claims of the members of the proposed classes, originate from the same conduct, practice, and procedure, on the part of Defendants.

82.     If brought and prosecuted individually, the claims of each member of the proposed classes would require proof of the same material and substantive facts.

83.     Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed classes.

84.     Plaintiff asserts identical claims, and seeks the same relief, for both himself and the members of the proposed classes.

85.     Plaintiff will fairly and adequately protect the interests of the members of the proposed classes.

86.     Plaintiff has no interest that directly and irrevocably conflicts with the interests of other members of the proposed classes.

87.     Plaintiff is willing and prepared to serve this Court and the members of the proposed classes.

88.     Plaintiff's interests are co-extensive with, and not directly antagonistic to, those of the absent members of the proposed classes.

89.     Plaintiff has retained the services of counsel who are experienced in both consumer protection claims and complex class action litigation.

90.     Plaintiff's counsel will vigorously prosecute this action, and will assert, protect, and otherwise represent both Plaintiff and all absent members of the proposed classes.

91.     The prosecution of separate actions by individual members of the proposed classes could create a risk of inconsistent or varying adjudications with respect to individual members of the proposed class, which could establish incompatible standards of conduct for Defendants.

92.     These incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the proposed classes.

93.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendants have acted or refused to act on grounds generally applicable to the members of the proposed classes, making final declaratory or injunctive relief appropriate.

94.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the proposed classes predominate over any questions affecting only individual members of the proposed classes.

95.     Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this complaint in that:

- Individual claims by the members of the proposed classes may be impracticable as the costs of pursuit could far exceed what any one member of the proposed classes has at stake;

- Very little litigation has been commenced over the controversies alleged in this complaint and individual members of the proposed classes are unlikely to have an interest in prosecuting and controlling separate individual actions; and

- The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

**Count I: Violation of 15 U.S.C. § 1692g(a)(5) as to Plaintiff and the Writing Class**

96.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-95.

97.     The FDCPA at 15 U.S.C. § 1692g(a)(5) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

*****

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

98.     TRS's May 6, 2016 letter to Plaintiff did not contain the disclosures required by 15 U.S.C. § 1692g(a)(5), nor did TRS provide such disclosures within five days thereafter.

99.     Specifically, the May 6, 2016 letter violated 15 U.S.C. § 1692g(a)(5) by failing to inform Plaintiff that TRS need only provide him the name and address of the original creditor, if different from the current creditor, if Plaintiff notified TRS of his request for that information *in writing*. *See, e.g., Osborn v. Ekpsz*, LLC, 821 F. Supp. 2d 859, 869 (S.D. Tex. 2011) ("The plaintiffs have stated a plausible claim based on the defendant's failure to state in the letter that a request under subsections 1692g(a)(4) and (a)(5) had to be in writing."); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-46 (E.D. Va. 2011) ("As far as this Court can tell, all of them have held that a debt collector's failure to include the 'in writing' requirement violates subsections (a)(4) and (5) of Section 1692g.");

100.    As a result, TRS violated 15 U.S.C. § 1692g(a)(5).

101.    TeleCheck is liable for TRS's violations of the FDCPA in the course of TRS's attempts to collect the debt from Plaintiff on behalf of TeleCheck. *See, e.g., Marucci,* 66 F.Supp.3d at 565; *Hernandez*, 2007 WL 2874059, at *17.

102.    TeleCheck, by virtue of its status as a debt collector under the FDCPA and because TRS acted as TeleCheck's agent, is liable for the actions of TRS—a debt collector that it retained to collect the Debt.

103.    The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally, and regarded his personal alleged debt.

104.    Likewise, Defendants' actions created a concrete harm in that they constituted a debt collection practice that Congress prohibited because such practice is likely to mislead consumers, causing them to misunderstand their rights and to not vindicate the protections afforded

them by federal law. *See, e.g., Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016) ("Thus, Church has sufficiently alleged that she has sustained a concrete—i.e., 'real'—injury because she did not receive the allegedly required disclosures. The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. In addition, Defendant's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm.").

**Count II: Violation of 15 U.S.C. § 1692g(b) as to Plaintiff and the Overshadowing Class**

105.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-95.

106.    The FDCPA at 15 U.S.C. § 1692g(a)(3) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

\*\*\*\*\*

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

107.    The FDCPA at section 1692g(b) provides:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the

consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

108.    TRS's May 6, 2016 letter contradicts, overshadows, and fails to explain an apparent contradiction with statutorily mandated disclosures that TRS was required to provide to Plaintiff and other consumers.

109.    Specifically, TRS's statements that (1) TeleCheck had entered Plaintiff's name in its nationwide computer files, and that until Plaintiffs debt is resolved, TeleCheck may not approve his checks or the opening of a checking account at more than 300,000 merchants and banks who use TeleCheck nationally, and that (2) any delay by Plaintiff, or attempt to avoid the debt, may affect his ability to use checks, overshadowed Plaintiff's dispute rights under 15 U.S.C. § 1692g.

110.    Indeed, Defendants' threat to prevent a consumer from using his checks or opening a checking account at more than 300,000 merchants and banks until his debt is resolved, would lead the least sophisticated consumer to believe that he needs to pay the debt immediately, and forego the exercise of his validation rights under 15 U.S.C. § 1692g.

111.    Moreover, as set forth above, this was not an idle threat. Defendants ultimately foiled Plaintiff's attempt to purchase groceries using a check from a different checking account, at a different merchant, causing Plaintiff humiliation and stress.

112.    Because the May 6, 2016 letter "lacks any explanation of how the threats pressuring the consumer for immediate payment are consistent with the validation notice, the threats overshadow and contradict the notice, which therefore has not been effectively conveyed." *See, e.g., Garcia–Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 819-20 (M.D.N.C. 2011)

113.    Similarly, the language on TRS's website contradicts, overshadows, and fails to explain an apparent contradiction with statutorily mandated disclosures that TRS was required to provide to Plaintiff and other consumers.

114.    TRS advises consumers that they can dispute their debts online or by mailing a letter to TRS. *See* Ex. A.

115.    Under the heading "Dispute" on TRS's website, consumers are advised:

How to dispute or object to a debt with TRS Recovery Services, Inc.

If you have received a collection notice or call and have a dispute or concern related to the item on which TRS Recovery Services, Inc. is collecting, *then you may complete the "Dispute Form" below or you may write a letter and mail or fax it to TRS so that TRS may research your dispute and/or objection*.

TRS Recovery Services, Inc.
Attention: Compliance Department
P.O. Box 4812
Houston, TX 77210-4812
Fax: 402.916.8140

*If you choose to write a letter, please include in your correspondence your first and last name, mailing address, bank routing and account number, and your state issued ID or drivers license number. In addition, please include the name of the merchant or financial institution, and the reference number or a specific description to identify the item in question. Please include a phone number where you may be reached during business hours.* Please allow 30 days to process your request.

*See* Ex. B (emphasis added).

116.    TRS's website has a link to the "Dispute Form." The "Dispute Form" requires the consumer's name, address, phone number(s), bank routing number(s) and account number(s), a description of the disputed item and amount in dispute, and advises the consumer to provide "a detailed description of your dispute, including all check numbers, bank account numbers and dates involved. Also, please attach to this form copies of additional documentation that will help support your dispute, such as payment receipts, bank statements, etc." *See* Ex. C.

117.    But under the FDCPA, consumers need not (1) specify the nature of the dispute, (2) provide the debt collector a valid reason for the dispute, or (3) provide any documentation to support the dispute. *See, e.g.*, *McCurdy v. Professional Credit Service*, Case No. 6:15–CV–01498–AA, 2015 WL 6744269, at *2 (D. Or. Oct. 30, 2015) ("A consumer may dispute a debt orally or in writing.  Additionally, when disputing a debt, a consumer does not need to provide supporting materials."); *Mendez v. M.R.S. Assocs.*, No. 03 C 6753, 2005 WL 1564977, at *4 (N.D. Ill. June 27, 2005) ("There is no requirement that the consumer have a valid reason for disputing the debt.").

118.    As the Second Circuit held:

> The consumer's right to take the position, at least initially, that the debt is disputed does not depend on whether the consumer has a valid reason not to pay. The consumer, for example, may not recognize the name of the creditor, may not know whether she incurred the debt, may have a question whether the debt (or part of it) has been paid, or may be unsure of the amount. Assuming the debt is in fact owed, these would not be "valid reasons" not to pay it. Nonetheless, regardless of the absence of a valid reason for nonpayment, the collector is obligated by the Act to cease collection, pending verification, if it receives the consumer's written notification of "dispute," and the Act requires the collector to notify the consumer of the collector's obligation to obtain verification upon receipt of such notice.

*DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 162 (2d Cir. 2001).

119.    Here, the least sophisticated consumer, upon visiting TRS's website, would incorrectly believe that he needed to mail supporting documentation and substantial personal information if he intended to dispute the debt asserted to be owed in the letter.

120.    This information includes:

- the consumer's bank routing and account number;

- the consumer's state issued ID or driver's license number;

- a phone number where the consumer may be reached during business hours;

- a description of the disputed item and amount in dispute;

- a detailed description of the dispute, including all check numbers, bank account numbers and dates involved; and

- copies of additional documentation that will help support your dispute, such as payment receipts, bank statements.

121.   Having to provide any of this information may dissuade a consumer from disputing her debt.

122.   And none of this information is required to be provided for the consumer to dispute her debt.

123.   As a result, TRS violated 15 U.S.C. § 1692g(b).

124.   TeleCheck is liable for TRS's violations of the FDCPA in the course of TRS's attempts to collect the debt from Plaintiff on behalf of TeleCheck. *See, e.g., Marucci*, 66 F.Supp.3d at 565; *Hernandez*, 2007 WL 2874059, at *17.

125.   TeleCheck, by virtue of its status as a debt collector under the FDCPA and because TRS acted as TeleCheck's agent, is liable for the actions of TRS—a debt collector that it retained to collect the Debt.

126.   The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally, regarded his personal alleged debt, and overshadowed his rights regarding how to dispute the validity of his personal debt.

127.   Likewise, Defendants' actions created a concrete harm in that they constituted a debt collection practice that Congress prohibited because such practice is likely to mislead consumers, causing them to misunderstand their rights and to not vindicate the protections afforded them by federal law.

128.   Plaintiff was in fact confused as to his rights in light of Defendants' letter.

129.    And further, Defendants' actions specifically caused Plaintiff stress and embarrassment because they resulted in the denial of a check that Plaintiff attempted to use while he was shopping for groceries.

**Count III: Violation of 15 U.S.C. § 1692e(5) as to Plaintiff and the Privacy Class**

130.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-95.

131.    The FDCPA at 15 U.S.C. § 1692e(5) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*****

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

132.    TRS's May 6, 2016 letter contained a section titled "**TELECHECK PRIVACY STATEMENT**."

133.    That portion of the letter advised Plaintiff, in pertinent part:

*TeleCheck Services, Inc. may collect nonpublic personal information about you from the following sources*: (1) information we, or our clients such as retailers and financial institutions, receive from you on checks, applications or other forms; (2) information about your transactions with us, our clients such as retailers and financial institutions, our affiliates, and others; (3) information we receive from other companies; and (4) information we receive from other consumer reporting agencies and financial institutions. The types of personal information from the above sources that TeleCheck collects and shares can include: social security numbers, drivers license numbers or other identification information; name, address and phone number, account balances and transactions; payment history; transaction or loss history; overdraft history; checking account information.

*Financial companies need to share customers' personal information to run their everyday business*.  TeleCheck may share personal information with affiliated and non-affiliated companies (both financial and non-financial companies) for everyday business purposes.  For instance, we may use it to process your transactions, maintain

your account(s), respond to court orders and legal investigations, or report to credit bureaus.

*See* Ex. A (emphasis in original).

134.   The only reasonable conclusion that an unsophisticated consumer could reach from Defendants' privacy notice is that the Defendants were claiming a legal right to disclose the nonpublic information about the consumer that they had obtained as a consequence of attempting to collect the debt.

135.   This information includes social security numbers, driver's license numbers or other identification information; name, address and phone number, account balances and transactions; payment history; transaction or loss history; overdraft history; and checking account information.

136.   Pursuant to the FDCPA, and contrary to the privacy statement in TRS's letter, Defendants do not have a right to share this nonpublic information with third parties absent the prior express consent of Plaintiff:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector ... a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

*See* 15 U.S.C. § 1692c(b).

137.   "Thus, the FDCPA clearly prohibits [Defendants] from sharing Plaintiff['s] personal nonpublic information without their express prior consent and, accordingly, the only reasonable interpretation of the Notice was as a threat to take illegal action." *Castro v. Green Tree Servicing, LLC*, 959 F. Supp. 2d 698, 714 (S.D.N.Y. 2013).

138.    Moreover, the privacy statement advised Plaintiff and other consumers that Defendants may use the nonpublic information they acquire to "report to credit bureaus." *See* Ex. A.

139.    But TRS subsequently advised Plaintiff that it does not report to any of the three major credit reporting agencies, and therefore, his alleged debt would have no effect on his credit score. *See* letter to Plaintiff dated June 26, 2016, attached hereto as Exhibit E.

140.    As such, Defendants appear to never have intended to report any of Plaintiff's information to the credit bureaus, even though they advised Plaintiff in their initial written communication to him that they may do so, in an apparent attempt to influence Plaintiff to pay the Debt.

141.    As a result, TRS violated 15 U.S.C. § 1692e(5).

142.    TeleCheck is liable for TRS's violations of the FDCPA in the course of TRS's attempts to collect the debt from Plaintiff on behalf of TeleCheck. *See, e.g., Marucci*, 66 F.Supp.3d at 565; *Hernandez*, 2007 WL 2874059, at *17.

143.    TeleCheck, by virtue of its status as a debt collector under the FDCPA and because TRS acted as TeleCheck's agent, is liable for the actions of TRS—a debt collector that it retained to collect the Debt.

144.    The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally, regarded his personal alleged debt, and overshadowed his rights regarding how to dispute the validity of his personal debt.

145.    Likewise, Defendants' actions created a concrete harm in that they constituted a debt collection practice that Congress prohibited because such practice is likely to mislead

consumers, causing them to misunderstand their rights and to not vindicate the protections afforded

them by federal law.

**Count IV: Violation of 15 U.S.C. § 1692e(10) as to Plaintiff and the Privacy Class**

146.    Plaintiff repeats and re-alleges each and every factual allegation contained in

paragraphs 1-95.

147.    The FDCPA at 15 U.S.C. § 1692e(10) provides:

A debt collector may not use any false, deceptive, or misleading representation or
means in connection with the collection of any debt. Without limiting the general
application of the foregoing, the following conduct is a violation of this section:

*****

(5) The use of any false representation or deceptive means to collect or attempt to
collect any debt or to obtain information concerning a consumer.

148.    TRS's May 6, 2016 letter contained a section titled "**TELECHECK PRIVACY**

**STATEMENT**."

149.    That portion of the letter, advised Plaintiff, in pertinent part:

*TeleCheck Services, Inc. may collect nonpublic personal information about you from
the following sources*: (1) information we, or our clients such as retailers and financial
institutions, receive from you on checks, applications or other forms; (2) information
about your transactions with us, our clients such as retailers and financial institutions,
our affiliates, and others; (3) information we receive from other companies; and (4)
information we receive from other consumer reporting agencies and financial
institutions. The types of personal information from the above sources that TeleCheck
collects and shares can include: social security numbers, drivers license numbers or
other identification information; name, address and phone number, account balances
and transactions; payment history; transaction or loss history; overdraft history;
checking account information.

*Financial companies need to share customers' personal information to run their
everyday business*.  TeleCheck may share personal information with affiliated and
non-affiliated companies (both financial and non-financial companies) for everyday
business purposes.  For instance, we may use it to process your transactions, maintain
your account(s), respond to court orders and legal investigations, or report to credit
bureaus.

*See* Ex. A (emphasis in original).

150. The only reasonable conclusion that an unsophisticated consumer could reach from Defendants' privacy notice is that Defendants were claiming a legal right to disclose the nonpublic information about the consumer that they had obtained as a consequence of attempting to collect the debt.

151. This information includes social security numbers, driver's license numbers or other identification information; name, address and phone number, account balances and transactions; payment history; transaction or loss history; overdraft history; and checking account information.

152. Pursuant to the FDCPA, and contrary to the privacy statement in TRS's letter, Defendants do not have a right to share this nonpublic information with third parties absent the prior express consent of Plaintiff:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector ... a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

*See* 15 U.S.C. § 1692c(b).

153. "Thus, the FDCPA clearly prohibits [Defendants] from sharing Plaintiff['s] personal nonpublic information without their express prior consent and, accordingly, the only reasonable interpretation of the Notice was as a threat to take illegal action." *Castro*, 959 F. Supp. 2d at 714.

154. Moreover, the privacy statement advised Plaintiff and other consumers that Defendants may use the nonpublic information they acquire to "report to credit bureaus." *See* Ex. A.

155.    But TRS subsequently advised Plaintiff that it does not report to any of the three major credit reporting agencies, and therefore, his alleged debt would have no effect on his credit score. *See* Ex. E.

156.    As such, Defendants appear to never have intended to report any of Plaintiff's information to the credit bureaus, even though they advised Plaintiff in their initial written communication to him that they may do so, in an apparent attempt to influence Plaintiff to pay the Debt.

157.    As a result, TRS violated 15 U.S.C. § 1692e(10).

158.    TeleCheck is liable for TRS's violations of the FDCPA in the course of TRS's attempts to collect the debt from Plaintiff on behalf of TeleCheck. *See, e.g., Marucci*, 66 F.Supp.3d at 565; *Hernandez*, 2007 WL 2874059, at *17.

159.    TeleCheck, by virtue of its status as a debt collector under the FDCPA and because TRS acted as TeleCheck's agent, is liable for the actions of TRS—a debt collector that it retained to collect the Debt.

160.    The harm suffered by Plaintiff is particularized in that the violative initial debt collection letter at issue was sent to him personally, regarded his personal alleged debt, and overshadowed his rights regarding how to dispute the validity of his personal debt.

161.    Likewise, Defendants' actions created a concrete harm in that they constituted a debt collection practice that Congress prohibited because such practice is likely to mislead consumers, causing them to misunderstand their rights and to not vindicate the protections afforded them by federal law.

### Trial by Jury

162.    Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a) Determining that this action is a proper class action under Fed. R. Civ. P. 23;

b) Certifying Plaintiff as class a representative;

c) Appointing Plaintiff's counsel as class counsel;

d) Adjudging and declaring that Defendants violated the FDCPA;

e) Awarding Plaintiff, and members of the proposed classes, statutory damages;

f) Awarding members of the proposed classes any actual damages they have sustained;

g) Awarding Plaintiff, and members of the proposed classes, reasonable attorneys' fees, costs, and expenses incurred in this action;

h) Awarding Plaintiff, and members of the proposed classes, any pre-judgment and post-judgment interest as may be allowed under the law;

i) Awarding other and further relief as this Court may deem just and proper.


Date: February 22, 2017                    Respectfully Submitted,

                                           /s/ Aaron. D. Radbil
                                           Aaron D. Radbil
                                           Greenwald Davidson Radbil PLLC
                                           106 E. 6th Street, Suite 913
                                           Austin, TX  78701
                                           Phone: 512-322-3912
                                           Fax: (561) 961-5684
                                           aradbil@gdrlawfirm.com

                                           James L. Davidson (to seek admission pro hac vice)
                                           Greenwald Davidson Radbil PLLC
                                           5550 Glades Rd, Suite. 500
                                           Boca Raton, FL 33431
                                           Phone: (561) 826-5477
                                           Fax: (561) 961-5684
                                           jdavidson@gdrlawfirm.com