## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| Thomas E. Whatley, on behalf of himself and others similarly situated, | § § § | Civil Action No.: Case 4:17-cv-00133-ALM |
| Plaintiff, | § § § | |
| vs. | § § | |
| TeleCheck Services Inc., and TRS Recovery Services, Inc., | § § § § | |
| Defendants. | § | |

### PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### Introduction

This case centers on the alleged failure of TRS Recovery Services, Inc. ("Defendant") to comply with certain provisions of the Fair Debt Collection Practices Act ("FDCPA") when sending initial debt collection letters to Texas consumers. Specifically, Thomas E. Whatley ("Plaintiff") alleged that, among other things, Defendant included language in its initial collection notices that overshadowed the validation notice required by the FDCPA. Defendant denies any liability or that its practices violated the FDCPA.

The parties have reached an agreement to resolve this case whereby Defendant will create a non-reversionary settlement fund in the amount of $120,000 to cover payments to participating class members, the costs of settlement administration, and an individual damages award for Plaintiff. Defendant also will pay—separate and apart from the fund—Plaintiff's counsel's attorneys' fees and expenses up to $62,500, subject to Court approval. Finally, Defendant has agreed to change certain language in its debt collection letters that formed the basis of this lawsuit.

Plaintiff now seeks certification of the settlement class and preliminary approval of the settlement. Plaintiff and his counsel strongly believe that the settlement is fair, reasonable, and adequate, and in the best interests of class members. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting preliminary approval of the settlement. Defendant does not oppose this relief.

## Summary of the Settlement

Defendant will pay $120,000 to compensate Plaintiff, class members who elect to participate in the settlement, and for settlement administration costs. After deducting costs for settlement administration (which Plaintiff estimates to be approximately $25,000), and a $1,000 award for Plaintiff, the remaining money will be distributed pro-rata to each of the 13,885 members of the class who elect to participate in the settlement. The class is defined as:

> All persons with a Texas address to whom TRS Recovery Services, Inc., on behalf of TeleCheck Services, Inc., mailed an initial debt collection communication between February 22, 2016 and February 22, 2017, in connection with the collection of a consumer debt.

Defendant additionally will pay, separate from any amount to Plaintiff and class members, and the costs of administrating the settlement, up to $62,500 to compensate Plaintiff's counsel for the attorneys' fees, costs, and expenses incurred litigating this matter.

## Argument

### I. This Court should preliminarily certify the settlement class.[1]

Pursuant to Rules 23(a) and 23(b)(3), Plaintiff must establish the following for preliminary certification of his proposed settlement class: (1) the class is so numerous that joinder of all

---

[1] The Class is defined as all persons with a Texas address to whom TRS Recovery Services, Inc., on behalf of TeleCheck Services, Inc., mailed an initial debt collection communication between February 22, 2016 and February 22, 2017, in connection with the collection of a consumer debt.

members is impracticable; (2) class members share questions of law or fact in common with Plaintiff; (3) Plaintiff's claims are typical of class members' claims; (4) Plaintiff will fairly and adequately protect the interests of the class; (5) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (6) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006).[2] And because certification is now sought in the context of the parties' settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").[3]

### A. Plaintiff satisfies the requirements of Rule 23(a).

#### 1. The proposed class is sufficiently numerous that joinder is impracticable.

Regarding numerosity, "[a]ny class consisting of more than forty members should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).[4] Here, there are 13,885 members of the class. As a result, joinder is impracticable, and Rule 23(a) numerosity is satisfied. *See Castro v. Collecto, Inc.*, 256 F.R.D. 534,

---

[2] Internal citations, quotations and footnotes are omitted, and emphasis is added, unless otherwise noted.

[3] Plaintiff moved for class certification on October 23, 2017. Dkt. No. 29. That motion articulates the basis for certification of the proposed class. Plaintiff will briefly summarize those arguments here but refers the Court to his prior motion for a more complete discussion of why the elements of Rule 23 are satisfied.

[4] Internal citations, quotations and footnotes are omitted, and emphasis is added, unless otherwise noted.

540-41 (W.D. Tex. 2009) (certifying FDCPA class when "Plaintiff ha[d] established at least more than 500 individuals received the same letter"); *Bywaters v. United States*, 196 F.R.D. 458, 465 (E.D. Tex. 2000) (Hannah, J.) (certifying class with estimated size of 300 to 1,000 members).

### 2. Plaintiff's claims present questions of law and fact common to the class.

"To satisfy the commonality requirement of Rule 23(a)(2), a plaintiff must show that there are questions of fact or law that are common to all class members. This requirement is usually met where a class's claims arise out of some form of standardized conduct by the defendant." *Simpson v. Safeguard Props., LLC*, No. 13 C 2453, 2014 WL 4652336, at *3 (N.D. Ill. Sept. 17, 2014).

Here, the questions of law and fact are entirely common. That is, the questions of whether Defendant is a debt collector under the FDCPA, and whether its form debt collection letters violated the statute, are common to each class member. Indeed, if brought and prosecuted individually, the claims of each class member would require proof of the same material items. Rule 23(a) commonality is correspondingly satisfied. *See, e.g.*, *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337, 339 (S.D. Miss. 2015) ("The Court also finds that Ms. McWilliams's claims originate from the same conduct, practice, and procedure on the part of the defendants, namely the issuance of standardized initial debt collection letters and form summonses.").

### 3. Plaintiff's claims are typical of the claims of the members of the class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are undoubtedly typical of the class's claims because he and the absent class members all allegedly suffered by way of a common practice allegedly employed by Defendant through its use of form debt collection letters. *See* Dkt. No. 29-1 at ¶¶ 5, 7. Thus, Plaintiff possesses the same interests and has suffered the same injuries as each class member, and he asserts identical claims and seeks identical relief

on behalf of the unnamed members of the class. Rule 23(a) typicality is met. *See Boles v. Moss Codilis, L.L.P.*, No. SA-10-CV-1003-XR, 2012 WL 12861080, at *10 (W.D. Tex. Jan. 17, 2012) ("Plaintiff's theory of liability rests on the allegation that Moss Codilis sent the same misleading letter to every member of the class. Since Plaintiff's claim is that the letter is objectively misleading, only one analysis will be dispositive of all the class members' claims."); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 08-493, 2008 WL 3850657, at *3 (M.D. Fla. Aug. 14, 2008) ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been satisfied.").

### 4. Plaintiff and his counsel will fairly and adequately protect the class's interests.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that he can act in a fiduciary role representing the interests of the class and has no interests antagonistic to the interests of the class. *See Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA–93–CA–108, 1996 WL 56247, at *4 (W.D. Tex. Feb. 6, 1996) ("[c]lass representatives satisfy the adequacy requirement unless they have an insufficient stake in the outcome or interest antagonistic to the unnamed members.").

Plaintiff possesses the personal characteristics necessary to act in a fiduciary role representing the interests of the class, and he has no interests antagonistic to those of the class members. To be sure, Plaintiff has been actively involved in this litigation, remained in regular contact with his attorneys throughout the process, and understands his important role in the case. *See* Dkt. No. 29-1. Plaintiff also participated in the parties' mediation session.

In addition, Plaintiff has retained the services of counsel who are well-versed in class action litigation. Courts across the country have appointed Greenwald Davidson Radbil PLLC ("GDR")

as class counsel in more than three dozen consumer protection class actions in the past several years, including those brought under the FDCPA. *See* Davidson Dec. at ¶ 6. Judge Carlton W. Reeves of the Southern District of Mississippi described GDR as follows:

> More important, frankly, is the skill with which plaintiff's counsel litigated this matter. On that point there is no disagreement. Defense counsel concedes that her opponent—a specialist in the field who has been class counsel in dozens of these matters across the country—'is to be commended for his work' for the class, 'was professional at all times' ..., and used his 'excellent negotiation skills' to achieve a settlement fund greater than that required by the law. The undersigned concurs ... Counsel's level of experience in handling cases brought under the FDCPA, other consumer protection statutes, and class actions generally cannot be overstated.

*McWilliams v. Advanced Recovery Systems, Inc.*, No. 3:15-CV-70-CWR-LRA, 2017 WL 2625118, at *3 (S.D. Miss. June 16, 2017). Thus, in addition to satisfying the adequacy prong of Rule 23(a)(4), GDR also satisfies the considerations of Rule 23(g). Accordingly, Plaintiff should be appointed class representative and his counsel should be appointed to represent the proposed class in this action.

### B. Plaintiff satisfies the requirements of Rule 23(b).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the settlement class satisfies Rule 23(b)(3).

#### 1. Common questions of law and fact predominate over any individualized inquiries.

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be

6

economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, the central legal issue before the Court is whether Defendant's form initial debt collection letter violates the FDCPA. For this reason, courts routinely find that claims based on form debt collection letters and standardized collection conduct satisfy the predominance requirement of Rule 23(b)(3). *See, e.g.*, *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 671 (S.D. Fla. 2014) ("Because the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA and FCCPA, common issues predominate."). Thus, Plaintiff satisfies the predominance requirement. *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (holding that "[a]s long as the letters that class members received are very similar ... the legal issue of whether those letters violate the FDCPA is predominate").

### 2. A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's claims.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Here, no one class member has an interest in controlling the prosecution of this action since the claims of all class members are identical, as the allegations involve standardized conduct, and each class member is likely to have suffered relatively small statutory damages. Rule 23(b)(3) superiority is thus met,

rendering the claims here eminently suitable to class treatment. *See Castro*, 256 F.R.D. at 543 ("Likewise, because the claims in this case are limited to whether the mailing of the letter to the class members was in violation of the FDCPA, the class action is the superior vehicle for determining the rights of debtors in this matter.").

## II. This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate.

Rule 23(e) requires that a court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25 (4th ed. 2002).

A preliminary fairness evaluation requires only that a court evaluate whether the proposed settlement: (1) was negotiated at arm's length; and (2) is within the range of possible litigation outcomes such that "probable cause" exists to disseminate class notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIGATION § 21.632-33. Importantly, a court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).

Then, after the preliminary fairness evaluation has been made, the class has been certified

for settlement purposes, and notice has been issued, the court holds a final fairness hearing to determine that the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34; 4 NEWBERG, *supra* at § 11.25.

To that end, the Fifth Circuit has identified six factors for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012). And "[i]n considering these factors, a court should keep in mind the strong presumption in favor of finding a settlement fair." *Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728, at *2 (E.D. La. Oct. 25, 2002).

Here, even though this Court need not completely evaluate the fairness, reasonableness or adequacy of the settlement at this preliminary stage, Plaintiff and his counsel firmly believe that that each relevant factor supports preliminary approval of the settlement.

### A. The settlement was the result of arm's-length negotiations facilitated by a mediator.

The parties engaged in litigation for approximately nine months. It was only after the parties exchanged written discovery and Plaintiff moved for class certification that the parties mediated this matter before Saul Solomon, Esq. The parties' initial in-person mediation session with Mr. Solomon resulted in an agreement on most of the settlement terms, with several outstanding issues remaining. The parties then continued their settlement discussions during the weeks that followed—with Mr. Solomon's continued oversight—and ultimately reached the

9

resolution presented here. Mr. Solomon's involvement and oversight weighs in favor of preliminary approval of the settlement. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) ("Magistrate Judge Shushan played an important supervisory role in mediating the Settlement. Her efforts further weigh in favor of a finding that the Settlement was fairly negotiated.").

The settlement, therefore, is not a product of collusion but rather was the result of arm's-length settlement negotiations among experienced counsel, with the assistance of a mediator, when each party had a clear view as to the strengths and weaknesses of their respective positions. *See* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Accordingly, the first factor favors preliminary approval.

### B. The complexity, expense, and likely duration of the litigation favors settlement.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

This case was no different, which is why the second factor also supports preliminary approval. Plaintiff had moved for class certification—which Defendant was set to oppose—and the parties still had to go through summary judgment, trial, and any appeals. Thus, settlement now

avoids the certainty of additional, expensive, and protracted litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."); *Henderson*, 2002 WL 31415728, at *3 (following discovery, "several fundamental issues in the case remained in dispute: whether the defendant violated the FDCPA; whether the alleged violation was merely technical; and whether the alleged violation was willful and clear. Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly.").

### C. The advanced stage of the proceedings supports preliminary approval of the settlement.

Turning to the third factor, courts also consider "'the degree of case development that class counsel have accomplished prior to settlement' to ensure that 'counsel had an adequate appreciation of the merits of the case before negotiating.'" *Jenkins*, 303 F.R.D. at 303-04. There may be no doubt that counsel had such an appreciation here.

The parties engaged in written discovery, and Plaintiff had moved for class certification at the time of the settlement. Counsel for both sides were armed with substantial information regarding the merits of Plaintiff's claims and his request for class certification. The settlement was therefore consummated with the parties having a clear view towards the strengths and weaknesses of their respective positions, including as to the possible recovery for the class at trial. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits, the range of possible recovery, and the uncertainty of damages favor preliminary approval.

11

The fourth and fifth factors likewise support this Court's approval of the settlement. In assessing the fairness and reasonableness of class settlements, courts are to consider "the likelihood and extent of any recovery from the defendants absent settlement." *Jenkins*, 300 F.R.D. at 304. That is, "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case." *In re Pool Prods. Distribution Market Antitrust Litig.*, MDL No. 2328, 2015 WL 4875464, at *13 (E.D. La. Aug. 13, 2015) (preliminarily approving class action settlement).

Here, there was no guarantee that Plaintiff would prevail on his claims. Defendant intended to oppose class certification and believed that it had strong defenses on the merits, including that the language in its initial debt collection letter did not overshadow the validation notice. And even assuming victory at trial, class members were not guaranteed any specific amount of statutory damages given that the FDCPA's damages provision is not mandatory, but rather provides for awards *up to* certain amounts after balancing certain factors. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, despite a jury verdict in the class's favor, this Court may have awarded little in the way of statutory damages, or even none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

Moreover, given that the class contains approximately 13,885 unique members, and assuming a claims rate of between 5 and 20 percent, each class member will receive approximately between $34.20 and $136.88 (after deducting administration costs and an individual damages award for Plaintiff). These amounts compare very favorably to other recent class action settlements

under the FDCPA. *See, e.g.*, *Lehmeyer v. Messerli & Kramer, P.A.*, No. 15-2419, ECF No. 61 (D. Minn. Aug. 10, 2016) (finally approving $25 per class member and statutory damages of $1,000 for plaintiff); *Kausch v. Berman & Rabin, P.A.*, No. 15-537, ECF 2016 WL 3944685 (E.D. Mo. July 8, 2016) (finally approving $3,555 for class members, or approximately $39 each, plus statutory damages of $1,000 and service award of $200 to plaintiff); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 3654472 (S.D. Ohio July 8, 2016) (finally approving $10 per class member and $1,500 to named plaintiff in statutory damages and incentive award); *Kemper v. Andreu, Palma & Andreu, PL*, No. 15-21226, ECF No. 52 (S.D. Fla. June 22, 2016) (finally approving $10 per class member and $1,000 to plaintiff); *Schuchardt*, 314 F.R.D. at 691 (finally approving approximately $15 per class member and $1,000 to named plaintiff); *Paxson v. Blatt, Hassenmiller, Leibsker & Moore, LLC*, No. 15-01488, ECF No. 40 (N.D. Ill. Oct. 16, 2015) (approximately $5.29 per class member);

Finally, Defendant has agreed to make certain changes to its form initial debt collection letter. In other words, Defendant will no longer engage in certain of the practices that formed the basis for the allegations in Plaintiff's complaint. Importantly, Plaintiff might not have obtained this change in Defendant's practices had he gone to trial. *See Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").

**E.     The opinions of Plaintiff and class counsel further support preliminary approval of the settlement.**

Finally, both Plaintiff and his counsel firmly believe that this settlement is fair, reasonable, and adequate, and in the best interests of class members. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010); *see also Mashburn*,

13

684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Here, proposed class counsel are highly experienced in class action litigation, particularly cases under the FDCPA, having litigated similar consumer protection cases on a class-wide basis throughout the country. *See* Davidson Decl. at ¶ 6. Accordingly, this factor further supports approval of the settlement at bar. *See Jenkins*, 300 F.R.D. at 305 ("Class Counsel believe that this Settlement is deserving of Final Approval, and the Court agrees."); *Henderson*, 2002 WL 31415728, at *4 ("Finally, the Court finds that the opinions of class counsel, class representatives, and absent class members weigh in favor of settlement. Counsel for both plaintiff and defendant concur that the settlement is fair.").

### III. This Court should approve the proposed notice plan.

Pursuant to Rule 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable," Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties have agreed to a notice program to be administered by a third-party class administrator, First Class, Inc., which will use all reasonable efforts to provide direct mail notice to each class member at his or her last known address, per Defendant's records. The plan complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of the action; (2) the essential terms of the settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for

objecting or requesting exclusion and that class members may make an appearance through counsel; (5) the process for submitting a claim, including providing a detachable claim form to each class member; (6) information regarding Plaintiff's request for statutory damages, and an award of attorneys' fees and expenses; and (7) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *see also Jenkins*, 300 F.R.D. at 302.

### IV.     Scheduling a final approval hearing is appropriate.

Finally, the last step in the settlement approval process is a final approval hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). This Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). The parties respectfully request that the Court set a date for a hearing on final approval, at the Court's convenience, approximately 120 days after the Court's preliminary approval of the settlement.

### Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order (i) preliminarily certifying the proposed class for settlement purposes only; (ii) appointing himself class representative; (iii) appointing Greenwald Davidson Radbil PLLC class counsel; and (iv) directing notice in the manner described above. As noted, Defendant does not oppose the relief requested herein.

Date: March 29, 2018                                 Respectfully Submitted,

                                                     /s/ *James L. Davidson*
                                                     James L. Davidson
                                                     Greenwald Davidson Radbil PLLC

5550 Glades Rd, Suite. 500
Boca Raton, FL 33431
Phone: (561) 826-5477
Fax: (561) 961-5684
jdavidson@gdrlawfirm.com

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
106 E. 6th Street, Suite 913
Austin, TX 78701
Phone: 512-322-3912
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

*Attorneys for Plaintiff and proposed Class Counsel*

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been electronically filed on March 29, 2018 via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ *James L. Davidson*
James L. Davidson