IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Thomas E. Whatley, on behalf of himself and others similarly situated, | § § § | Civil Action No.: Case 4:17-cv-00133-ALM |
| Plaintiff, | § § § | |
| vs. | § § | |
| TeleCheck Services Inc., and TRS Recovery Services, Inc., | § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

### Introduction

The agreement reached here between Thomas E. Whatley ("Plaintiff") and TRS Recovery Services, Inc. ("TRS")[1] requires TRS to create a non-reversionary settlement fund of $120,000 to cover payments to participating class members, the costs of settlement administration, and an individual damages award for Thomas E. Whatley ("Plaintiff"). As a result, each of the 1,223 participating class members will receive approximately $78.78.[2] Separate from the settlement fund, TRS will also pay Plaintiff's counsel $62,500 in attorney's fees, costs and expenses. In addition, TRS agreed to change some of the language in its initial debt collection letters to address concerns raised by Plaintiff through this lawsuit. Given the settlement fund and important changes in TRS's debt collection practices, the settlement represents an excellent result for the class.

---

[1]    TeleCheck Services Inc. ("TeleCheck") was also a party to this action until its dismissal in February 2018. *See* ECF No. 36. TRS and TeleCheck are referred to herein as "Defendants."

[2]    The parties initially believed there to be 13,885 class members. However, after accounting for the fact that some records in the class list contained the names of entities and not natural persons, the parties have determined that there are no more than 12,899 class members.

The Court preliminarily approved the parties' settlement on December 29, 2017. *See* ECF No. 43. Thereafter, the class administrator—First Class, Inc. ("First Class")—sent the Court-approved notice, and later a supplemental notice, via direct mail to each class member. No class member objected to the settlement, and only one class member excluded herself from the settlement. The objection and exclusion deadline has now passed. Moreover, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act ("CAFA"). In light of the benefits set forth above and the lack of opposition from TRS and the class members, Plaintiff respectfully submits that this settlement should be finally approved.

### Summary of the Class Settlement

**I. Class members will receive approximately $78.78 each, and TRS has changed the debt collection letter at issue.**

TRS will pay $120,000 to compensate Plaintiff, class members who elected to participate in the settlement, and for settlement administration costs. After deducting the costs for settlement administration (which Plaintiff estimates to be approximately $22,648.06), and a $1,000 award for Plaintiff, the remaining money will be distributed pro-rata to each of the 1,223 members of the class who elected to participate in the settlement. As a result, each participating class member will receive approximately $78.78. To the extent any settlement checks go uncashed after all reasonable steps to forward checks to any forwarding addresses, the residual funds will be disbursed to Legal Aid of NorthWest Texas, the Court-appointed *cy pres* designee. Importantly, none of the funds will revert back to TRS.

**II. The class overwhelmingly supports the parties' settlement.**

Upon preliminary approval, the parties undertook a robust notice program providing direct mail notice to all class members at their last known address according to TRS's records. Before the mailing, First Class took its usual initial steps of de-duplicating class members' records and

updating addresses through the U.S. Postal Service. *See* Affidavit of Bailey Hughes, attached as Exhibit A, at ¶¶ 6-7. First Class then disseminated notice on April 25, 2018. *Id.* at ¶ 10. On May 21, 2018, First Class disseminated a supplemental notice to 9,384 class members who had not yet returned a claim form, or whose notice had not been returned as undeliverable by the U.S. Postal Service at that point. *Id.* at ¶ 13.

When 2,855 notices were returned as undeliverable, First Class attempted to locate new addresses using the LexisNexis Accurint locate service. *Id.* at ¶ 16. First Class found new addresses for 927 of those records and re-mailed notice to them. *Id.* As a result of First Class's efforts, only 2,158 notices were returned as undeliverable with no forwarding address, representing a success rate of over 83.3% in the notice campaign. Also worth noting, class counsel has maintained relevant documents, including the court-approved long-form notice, on its website.[3]

Plaintiff is pleased to report that the class's reaction has been overwhelmingly positive—not one person objected to the terms of the settlement, and just one class member excluded herself. *Id.* at ¶¶ 18-19. As well, no objections have resulted from notice provided to governmental agencies under CAFA. Such strong support for the settlement underscores its fairness and reasonableness.

### III. Included in the $120,000 settlement fund is $1,000 in "additional" damages for Plaintiff.

Lastly, included in the settlement fund is $1,000 in "additional" damages for Plaintiff. To that end, the FDCPA at subsection 1692k(a) reads:

(a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

---

[3]    *See* https://www.gdrlawfirm.com/Whatley-v-TRSRecovery-Services-FDCPA-class-action.

3

\* \* \*

(2)

(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, **(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and** (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

15 U.S.C. § 1692k(a).[4]

Thus, the statute expressly provides for a recovery of up to $1,000 in addition to such amount as each class member could recover. And by securing an individual payment of $1,000 as part of the settlement, Plaintiff will receive the maximum statutory damages to which he is entitled.[5]

## Argument

### I.     The Court should confirm its certification of the settlement class.

This Court previously certified the settlement class in connection with preliminary approval. *See* ECF No. 43. Plaintiff agrees with the Court's reasoning and does not believe it necessary to revisit class certification in granting final approval. Thus, Plaintiff respectfully submits that this Court should confirm its certification of the settlement class.

---

[4]     Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

[5]     Alternatively, this amount is also reasonable considering Plaintiff's work in securing a monetary recovery for members of the class and a change in TRS's debt collection practices. Other courts have allowed incentive awards in such situations, though the recovery here is one of statutory damages. *See*, *e.g.*, *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10–cv–638, 2014 WL 497031, at *17 (S.D. Ohio Feb. 7, 2014) ("There is precedent for incentive awards in the neighborhood of $1,000 to $5,000 in consumer protection class actions."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 259 (D.N.J. 2005) (awarding $1,000 incentive award to plaintiff who was not deposed and not required to produce documents); *Tenuto v. Transworld Sys.*, No. CIV. A. 99–4228, 2002 WL 188569, at *4–5 (E.D. Pa. Jan. 31, 2002) (granting award of $2,000 in FDCPA class action).

## II. The Court should finally approve the parties' class settlement as fair, reasonable, and adequate under Rule 23(e).

Moving to the terms of the settlement, to assess the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e), the Fifth Circuit has identified six factors for courts' consideration: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012).

Plaintiff and his counsel firmly believe that the parties' settlement is in the best interests of the class members, and that each of the foregoing factors supports this Court's approval of the settlement. What's more, "[i]n considering these factors, a court should keep in mind the strong presumption in favor of finding a settlement fair." *Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728, at *2 (E.D. La. Oct. 25, 2002) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.")).

### A. The settlement was the result of arm's-length negotiations facilitated by an experienced mediator.

The parties litigated this case for almost nine months before reaching the settlement at bar. Along the way, the parties engaged in written discovery, and Plaintiff moved for class certification. *See, e.g.*, ECF No. 29. Thereafter, the parties mediated the case in Nashville in front of Saul Solomon, Esq. Though the parties did not reach a complete resolution at the initial in-person mediation with Mr. Solomon, the parties continued their settlement discussions during the weeks

that followed—with Mr. Solomon's continued oversight—and ultimately reached the settlement now before this Court. Mr. Solomon's assistance in reaching this settlement lends support to its fairness and reasonableness. *See Vassallo v. Goodman Networks, Inc.*, No. 15-97, 2016 WL 6037847, at *2 (E.D. Tex. Oct. 14, 2016) (Guirola, Jr., C.J.) ("The parties participated in extensive discovery and two mediation sessions before entering into the settlement agreement. The use of a mediator during settlement negotiations is an indication that the settlement negotiations were fair and non-collusive."); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) ("Magistrate Judge Shushan played an important supervisory role in mediating the Settlement. Her efforts further weigh in favor of a finding that the Settlement was fairly negotiated.").[6]

Indeed, the parties' agreement is not a product of collusion but rather was the result of weeks of arm's-length settlement negotiations among experienced counsel, with the assistance of an experienced mediator, when each side had a clear view as to the strengths and weaknesses of their respective positions following years of litigation. *See Jones v. Gusman*, 296 F.R.D. 416, 467 (E.D. La. 2013) (citing the "protracted period of litigation between" the parties as evidence that class settlement was "not tainted by fraud or collusion"); *Henderson*, 2002 WL 31415728, at *3 ("there is no evidence of fraud or collusion, or that plaintiffs' counsel bargained away substantial rights of the class in exchange for relief to the named plaintiff"). Accordingly, the first factor favors approval.

---

[6] *See also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

6

### B. The complexity, expense, and likely duration of continued litigation favors settlement.

Turning to the second factor, it bears noting that there exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331). That is, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

This case was no different, as at the time of settlement, Plaintiff's motion for class certification was pending, and the parties were preparing to begin depositions and undertake summary judgment motions. In other words, numerous uncertainties remained as to both liability and potential damages. The settlement provides the certainty of immediate cash relief rather than additional, expensive, and protracted litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."); *Henderson*, 2002 WL 31415728, at *3 (following discovery, "several fundamental issues in the case remained in dispute: whether the defendant violated the FDCPA; whether the alleged violation was merely technical; and whether the alleged violation was willful and clear. Resolving these questions through a trial and, ostensibly, an appeal, would likely be burdensome and costly."). The second factor correspondingly supports approval of the parties' agreement.

### C. The advanced stage of these proceedings lends additional support for the settlement.

Next, courts also consider "'the degree of case development that class counsel have

accomplished prior to settlement' to ensure that 'counsel had an adequate appreciation of the merits of the case before negotiating.'" *Jenkins*, 303 F.R.D. at 303-304 (quoting *Moore v. Halliburton Co.*, No. 02-1152, 2004 WL 2092019, *7 (N.D. Tex. Sept. 9, 2004)). Here, there may be no doubt that counsel—and therefore this Court—have such an appreciation.

At the time the settlement was reached, the case had already been pending for almost nine months, the parties had engaged in written discovery, and Plaintiff had filed his motion for class certification Thus, counsel for both sides were armed with substantial information regarding the merits of Plaintiff's claims, the propriety of class certification, and the likely size of any potential class recovery.

The settlement was therefore consummated with the parties having a clear view towards the strengths and weaknesses of their respective positions. As a result, the third factor offers further support for the settlement at bar. *See Vassallo*, 2016 WL 6037847, at *2 ("Thus, the parties have had the opportunity to evaluate the merits of their respective positions, and this factor favors approval of the settlement."); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Plaintiff's success on the merits, the range of possible recovery, and the uncertainty of damages all favor approval.

As well, the fourth and fifth factors likewise support approval. In assessing the fairness and reasonableness of class settlements, courts are to consider "the likelihood and extent of any recovery from the defendants absent settlement." *Jenkins*, 300 F.R.D. at 304. In other words, "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case." *In re Pool Prods. Distribution Market Antitrust Litig.*,

8

MDL No. 2328, 2015 WL 4875464, at *13 (E.D. La. Aug. 13, 2015). "However, the court 'must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial.'" *Vassallo*, 2016 WL 6037847, at *3 (quoting *Reed*, 703 F.2d at 172).

Here, there was no guarantee that Plaintiff would prevail on his claims. Defendant intended to oppose class certification and believed that it had strong defenses on the merits, including that the language in its initial debt collection letter did not violate the law. And even assuming victory at trial, class members were not guaranteed any specific amount of statutory damages given that the FDCPA's damages provision is not mandatory, but rather provides for awards *up to* certain amounts after balancing certain factors. *See* 15 U.S.C. § 1692k(b)(2). Accordingly, despite a jury verdict in the class's favor, this Court may have awarded little in the way of statutory damages, or even none at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

Moreover, through the settlement, each participating class member will receive approximately $78.78 (after deducting administration costs and an individual damages award for Plaintiff). These amounts compare very favorably to other recent class action settlements under the FDCPA. *See, e.g.*, *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150, at *4 (D. Me. Feb. 21, 2017) ($42 per class member); *Cobb v. Edward F. Bukaty, III, PLC*, No. 15-335, 2016 WL 4925165, at *4 (M.D. La. Sept. 14, 2016) ($52.28 per class member); *Lehmeyer v. Messerli & Kramer, P.A.*, No. 15-2419, ECF No. 61 (D. Minn. Aug. 10, 2016) (finally approving

$25 per class member and statutory damages of $1,000 for plaintiff); *Kausch v. Berman & Rabin, P.A.*, No. 15-537, ECF 2016 WL 3944685 (E.D. Mo. July 8, 2016) (finally approving $3,555 for class members, or approximately $39 each, plus statutory damages of $1,000 and service award of $200 to plaintiff); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 3654472 (S.D. Ohio July 8, 2016) (finally approving $10 per class member and $1,500 to named plaintiff in statutory damages and incentive award); *Kemper v. Andreu, Palma & Andreu, PL*, No. 15-21226, ECF No. 52 (S.D. Fla. June 22, 2016) (finally approving $10 per class member and $1,000 to plaintiff); *Schuchardt*, 314 F.R.D. at 691 (finally approving approximately $15 per class member and $1,000 to named plaintiff); *Paxson v. Blatt, Hassenmiller, Leibsker & Moore, LLC*, No. 15-01488, ECF No. 40 (N.D. Ill. Oct. 16, 2015) (approximately $5.29 per class member).

Finally, Defendant has agreed to make certain changes to its form initial debt collection letter. In other words, Defendant will no longer engage in certain of the practices that formed the basis for the allegations in Plaintiff's complaint. Importantly, Plaintiff might not have obtained this change in Defendant's practices had he gone to trial instead. *See Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961 (N.D. Ohio 2009) ("This Court agrees that declaratory and injunctive relief are not appropriate under the FDCPA.").

### E.  The opinions of Plaintiff, class counsel, and absent class members weigh heavily in favor of approval.

Both Plaintiff and class counsel firmly believe that this settlement is fair, reasonable, and adequate, and in the best interests of class members, which is an important consideration in the analysis. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010); *see also Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently

structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Moreover, absent class members overwhelmingly support the terms of the settlement—none have objected, just one person has excluded herself, and no objections have resulted from CAFA notice. Such strong support after the parties' targeted, direct-mail notice program speaks volumes of the settlement's fairness and reasonableness. Thus, the sixth factor, too, militates toward final approval. *See Vassallo*, 2016 WL 6037847, at *3 ("The parties and their attorneys agree that the settlement is a fair and reasonable resolution of a bona fide dispute. Therefore, this factor also supports a finding in favor of approving the settlement.").

## Conclusion

The settlement presented has garnered nearly universal support from the class and provides excellent benefits to Plaintiff and absent class members. Plaintiff therefore respectfully requests that this Court enter the accompanying order granting final approval to the parties' class action settlement. As previously noted, TRS does not oppose this relief.

Date: July 3, 2018                                   Respectfully Submitted,

/s/ *James L. Davidson*
James L. Davidson
Greenwald Davidson Radbil PLLC
5550 Glades Rd, Suite. 500
Boca Raton, FL 33431
Phone: (561) 826-5477
Fax: (561) 961-5684
jdavidson@gdrlawfirm.com

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
106 E. 6th Street, Suite 913
Austin, TX 78701
Phone: 512-322-3912
aradbil@gdrlawfirm.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been electronically filed on July 3, 2018 via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ *James L. Davidson*
James L. Davidson